Penrod W. Keith #4860
pkeith@djplaw.com
Duane H. Gillman #1194
dgillman@djplaw.com
**DURHAM JONES & PINEGAR**
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000
     Attorneys for Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| In re:<br><br>TWIN PEAKS FINANCIAL SERVICES, INC.,<br><br>                      Debtor | Bankruptcy Case No.<br><br>07-25399 RKM<br><br>Chapter 7 |
|---|---|
| In re:<br><br>MNK INVESTMENTS INC. (consolidated with Twin Peaks Financial),<br><br>                      Debtor. | Consolidated Cases<br><br>[FILED ELECTRONICALLY] |

**TRUSTEE'S SEVENTH STATUS REPORT**

Duane H. Gillman, duly appointed trustee in this chapter 7 case, hereby makes this SEVENTH status report in the above captioned bankruptcy case and states as follows:

**Case History**

1. The case was commenced as an involuntary case by a petition filed on November 9, 2007 by certain petitioning creditors.

2. Shortly after the involuntary was filed, the Debtors stipulated to the entry of an order for relief and such order was entered on December 4, 2009; Alan Nissen and Alex Short agreed at the same time to become officers and fiduciaries of the Debtors replacing previous officers who had served in that position.  Prior to Nissen and Short assuming management of the Debtor, Kenneth Case ("KC") Tebbs was the controlling officer of the Debtor.

SLC_2229238.1

3. Nissen and Short hired Fabian & Clendenin as attorney for the debtors in possession and PricewaterhouseCoopers LLP as accountant.

4. The Debtors were governed and managed by Mr. Nissen and Mr. Short from the date of the order for relief until their resignation from those positions, shortly after this case was converted to chapter 7 on June 30, 2008 and the Trustee was appointed. During his tenure as manager of the Debtor, Alan Nissen obtained $439,000 in estate assets.

5. The case was converted to chapter 7 upon motion of the United States Trustee and by agreement of the Debtors presumably because of an inability to reorganize.

6. The Trustee was appointed on or about July 2, 2008. Since that time he has begun investigating the assets, liabilities and financial affairs of the Debtors.

**Suit Against Alan Nissen**.

7. The Trustee determined early in the case that Nissen had improperly obtained estate assets and sued Mr. Nissen for return of the money he had obtained under various theories including an allegation of breach of fiduciary duties.

8. In December of 2011, the Trustee obtained a judgment against Alan Nissen liquidating a debt in the amount of $439,100 and finding such judgment to be nondischargeable debt in bankruptcy based on Mr. Nissen's breach of fiduciary duty as an officer of Twin Peaks. The Trustee holds a judgment against Mr. Nissen in the amount of $439,100.

**Prosecution of KC Tebbs**.

9. The Trustee also was informed by Utah State attorneys that they were investigating KC Tebbs in connection with his management of the Debtor. The Trustee provided significant material support to this investigation by making his attorneys, accountants and

himself personally available for interview by investigative authorities.  Mark Hashimoto, the Trustee's accountant reconstructed the accounting history of the Debtor and provided this accounting history which was subsequently used in the prosecution of KC Tebbs.  This accounting aided the prosecutors in concluding that KC Tebbs ran the Debtor as a Ponzi Scheme – an investment scheme in which investors are paid not from operational profits of the company but rather from investment from "new" investors into the company.

10. In September of 2013, KC Tebbs was sentenced to 6 ½ years in jail on his guilty pleas to a fraud charge stemming from the Ponzi Scheme allegation.  Mr. Hashimoto was asked to testify in court as part of this process.

### Overview of Case

11. The significant remaining matters in this case are the preference and fraudulent transfer cases initiated by the Trustee.

### Litigation – Settlement, Bankruptcy and Judgments

12. As reported in the previous status reports, the Trustee filed over 150 lawsuits seeking to recover more than $16,500,000 in fraudulent and preferential transfers from various persons who allegedly received more that their investment amount with the Debtors and/or persons who received payments in the 90 day period prior to the Petition Date.

13. At this point, the Trustee has resolved a number of the lawsuits either by settlement or by dismissal after obtaining additional information respecting defenses asserted in any particular lawsuit.

14. In analyzing the lawsuits, the Trustee has determined that many of the defendants would be incapable of paying the amount of recovery sought in the complaint.  In instances in

which Defendants have made such representations, the Trustee has obtained a so-called impecuniosity affidavit setting forth the assets of liabilities of such defendants in a sworn statement.  Based on impecuniosity, the Trustee has accepted a compromise amount representing generally what the Trustee believes he could receive if such defendant were to file a chapter 7 bankruptcy case or, in many instances, more than that amount.

15.    Accordingly, the Trustee has settled approximately 80 lawsuits for a total dollar amount of $512,030.26.

16.    An additional 7 defendants have filed for bankruptcy and received discharges.

17.    In addition, the Trustee has obtained approximately 34 judgments against various defendants representing approximately $2,430,000 in dollar amount.  Of these judgments, the Trustee is actively pursuing collection on 19 of the judgments by scheduling (or having held) supplemental proceedings and asset searches.  The Trustee has no current opinion on the collectability of such judgments other than to note that collection on judgments, in the Trustee's experience, is generally low.

18.    The Trustee intends to auction/abandon 15 judgments obtained for the most part against non-individuals including corporate entities and limited liability companies.  The Trustee has filed the motion to auction/abandon in connection with this status report.

**Remaining Lawsuits**

19.    There are approximately 9 remaining lawsuits in this case totaling approximately $1,360,000 sought in those lawsuits.  In certain cases defendants have presented defenses which have lessened the potential recovery from the amount sought in the complaint.  Accordingly, the Trustee believes that the actual amount still recoverable under the remaining lawsuits will be less

but it is difficult to quantify the amount which might eventually be recovered.  The Trustee has obtained one judgment for approximately $440,000 which is currently in appeal.

## Claims Against the Debtors

20. The Trustee has previously disclosed the amount and nature of claims in these consolidated cases.  There are over 100 claimants in this case with claims totaling in excess of $21,000,000.

21. It appears that certain persons collectively were owed hundreds of thousands of dollars as of the Petition Date.  Other persons, through a process of payment from the Debtors, were able to recoup their initial investment plus additional money representing an interest on their investment.  In fact, this over-recovery was not funded by returns from sale of property by the Debtors but was, for the most part, funded by the money of subsequent investors.

22. The Trustee is charged under Section 704 of the Bankruptcy Code with reviewing claims in this case if appropriate – if a purpose it to be served.  Based on the analysis set forth above, the Trustee believes there is a possibility that there may be assets to distribute in this case and that he therefore may have cause to review the filed claims in detail.  To the extent collectible, assets in this case will largely be recovered from investors who may have been paid more than the amount of their investment with the Debtors as explained in *Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1286 (10th Cir. 1996), and the litigation filed following those principles cited below and also from potential preference recoveries.  However, to the extent the Trustee determines that no purpose will be served through a claims review, the Trustee will not undertake that analysis.

**Current Cash Status, Trustee's Intentions, Fee Applications**

23. Currently, the Trustee has a balance of approximately $59,000 of estate funds some of which are held by the estate pending approval of settlement agreements. Parties may obtain a copy of the Trustee's accounting upon request. The Trustee's intention is to increase the cash estate by pursuing the avoidance actions as set forth above.

24. The Trustee has or will file certain fee applications for professionals in these cases including applications for Durham Jones & Pinegar, the Trustee, and Mark Hashimoto. The application on file as of the date of this status report is the application for Durham Jones & Pinegar which seeks $201,309.00 in reimbursement of fees and $1,759.17 for actual and necessary expenses. Durham Jones & Pinegar has previously been allowed approximately $1,780,000.00 in fees in these consolidated cases. The Trustee has submitted a request for $16,133.27 in compensation. The Trustee has been previously allowed approximately $63,000.00 in compensation. The estate's accountant, Mark Hashimoto, has submitted a request for $5,615.00 in fees and $20.75 for expenses. Mr. Hashimoto has previously been allowed approximately $143,000.00 in fees.

DATED this 8th day of July, 2015.

                                              */s/ Penrod W. Keith*
                                              Penrod W. Keith
                                              Durham Jones & Pinegar
                                              Attorneys for Trustee